Case No. 244085, Keith Cole v. Toledo Refining Company, LLC Oral argument not to exceed 15 minutes per side Mr. Baer for the appellate Good morning. Good morning, Your Honors. Bill Baer here for Keith Cole. Let me start by indicating that this case arose from a explosion that took place at the Toledo refinery in east of Toledo, Ohio, back on November 23, 2021. The force of the explosion actually rattled several houses in the near vicinity of that particular occurrence, one of which was Keith Cole's house. And when the force did that, he was thrown against the interior walls of his house, causing him to sustain physical injury to his neck and his shoulder. When the case proceeded, there was also an issue about damage to his house, but we were not able to come up with any expert who was prepared to issue an opinion on that particular part of the case, so the case proceeded on the physical injuries to Mr. Cole. Now, the big thing in this case was that the case proceeded through some limited discovery. I wouldn't say limited, but some discovery. Some expert witness disclosures were made in accord with the court's order. Mr. Cole disclosed two potential experts. The first one was Dr. Atkins, and the second one was a physical therapist, Mr. Johnson. And when he initially disclosed these two individuals, he disclosed them indicating that they would testify on both causation and their injuries as identified by the medical experts. So Atkins, isn't he just reporting what Mr. Cole told him caused the injuries? I mean, doctors often put that in. If you come in and say, I cut my hand on a wine glass, they put, hand cut caused by a wine glass stitched him up. Well, in fact, that is what usually happens when someone shows up at a doctor's office with an injury. And isn't Atkins his treating physician? Yes, he was his treating physician. So isn't that all that is? Well, it is what? I'm sorry. That he's just reporting what he told them. Well, the doctor, in any particular situation where a physician or a medical provider, when he or she gets a patient and they come in exhibiting symptoms, they take the history. They take the history, they apply the history to the symptoms, and that's how they can reach their conclusion. Right, but they're not making a determination of causation. Go back to my wine glass analysis. I'm sorry. Analysis, if I lied to the doctor, instead I broke Judge Sutton's window with my hand and cut it. In order to get some wine. In order to get some wine. The doctor would put that down as the causation. In other words, and here's what the doctor wrote, and it's in the history of present illness. He said the patient did not get his MRI done. The patient has neck pain and discomfort. This pain started when an explosion rattled his home, and the shaking caused his neck pain and discomfort. He's just writing what the patient told him. Well, he's also examining the patient and making his conclusion regarding his medical findings. So where does he say in the conclusion, where does he say that it's consistent with that? You mean word in his record, like this is consistent? Yeah, because all you're pointing to in his record is, and this is my only point, is the history. You're not pointing to a determination the doctor made. I understand what you're saying, Your Honor. The court in Jensen v. Chronicle Corporation, which is cited I think in a couple of briefs here, addressed that issue to a certain extent where they say that professionals will form their opinions based on the history from the patient and their observations in treatment, and that's what happened in this case with respect to Dr. Atkins. I mean, I'm not sure you're answering Judge Lepar's question. I mean, why would it be so difficult to get an expert, another doctor, to say, these injuries are quite consistent with an explosion, you know, whatever, several hundred yards away? I mean, you started the case out by saying you couldn't bring a claim based on property damage because you didn't have an expert to say anything. I mean, so you get the point. Why isn't that a problem here? Well, again, because the opinions that he gives in his record are the way most treating physicians give their opinions. It's a practical matter. It's not in an opinion section. Well, there usually isn't anything in a treating record of a physician that says opinion. But that's why you get a report or something from them that says, in my professional judgment, this is what happened. I mean, go ahead. Sorry. No, all I was going to say is that the treating provider frequently and almost always is relying on their record and what their observations of the patient were and what their history was of the patient. Let's just say it said this, so I'm making it up. This is hypothetical. Let's just say what's in the record is just the doctor's describing it, and they put it in quote marks. He came in complaining of this pain. He says it was caused by this explosion. That's your only evidence of causation. Does that suffice to get through summary judgment? I think as long as the physician recognizes that. In my example, he just quoted it. He's just quoting the patient. That suffices? Because he chose to honor the statement? Well, the fact of the matter is that's usually the way physicians' opinions show up in their medical records. That's not helping you, though. You're saying that there are Ohio Supreme Court cases saying this works? That's why there's a difference. Does it go to the lawyer first and tell the lawyer exactly how to frame the statement to the doctor? Well, if this had been a retained expert, retained specifically for the purpose of litigation, I would agree that that's the way that would normally proceed with that kind of a report given by him. But it's clearly recognized that when a physician or a health care provider is giving their opinion based on their treatment of the patient, that particular portion of Civil Rule 26, A to B, does not apply to that particular type of professional versus patient relationship. Sure, but you still have to have an opinion from them, not just a recitation.  You still have to have an opinion from them. I agree with you that a treating physician might not have to comply with Rule 26 and provide a report, but you have to have a deposition, an opinion, something saying, in my professional judgment, this caused these injuries. Something a jury can latch onto other than when you call the – imagine this scenario. You go to trial. You call the doctor as your expert on causation, and you ask him, what caused the injuries? And he says, well, I don't know. He told me the explosion caused the injuries. And I accepted that for treatment purposes. That's pretty common. My doctor usually won't inquire whether I broke a window or cut it on a glass. He's not going to interrogate me. He's just going to accept it and treat the patient. I'm sorry. The situation with the treating professional like that, though, is that's the way their opinions are developed and presented, just that way. Back to Judge Sutton's point, do you have an Ohio case that says that? Like I said, I'm not sure this – Jensen v. Chronicle. That's a Southern District of Florida case. Yeah, I agree. That's the most pronounced opinion on that that I could find right now. What if the doctor had quoted his statement and it went the other way? He said, I don't know why my head's hurting. I mean, there was this explosion, but that's impossible. It was a mile away. There's just no way it would be causing this. The doctor just writes all that down. Does that mean you lose as a matter of law even though you've got an expert to say something? That means that that particular doctor wouldn't be able to be called to give his opinion on that particular issue. Well, it proves the point. You need someone besides a doctor just relaying what the patient reported. That's what it shows. Because you can't – the rule's got to be symmetric. You can win and lose on your reporting thing. Well, the fact of the matter is that's, like I said, the way most of the opinions are generated by physicians who are treating professionals as opposed to retained experts for the case. Dr. Atkins said that there was a – your client experienced neck and – I think it was neck and shoulder pain secondary. I'm sorry, neck and arm pain secondary to an explosion. Okay, but he did not state a diagnosis. So what we're left with is a report of injury from an explosion but not even a medical diagnosis because the doctor didn't furnish one. Is that the state of affairs here? Well, again, Mr. Johnson was a physical therapist who treated Mr. Cole on referral from Dr. Atkins. And he actually – But what was Dr. Atkinson's diagnosis of your patient? He didn't even state a diagnosis, did he? Well, what he did was he gave the symptoms and he relied on those. It was neck pain and upper back. Yeah, but it could be an impairment of nerves or something specific, or he could have ordered further medical tests or something to attempt to arrive at a diagnosis. And I guess the doctor didn't go beyond the symptoms reported by the client. So isn't that kind of the state of affairs we wind up with here? Well, the state of affairs was that the doctor indicated all the causation that he had in the records that he made of this particular patient visit. And it is just the typical thing that we run into with treating doctors as opposed to retained experts who had no connection with the injured person and are giving opinions based on records or other non-direct physical injury information. Mr. Baer, I see your light is on. I'm sorry? I see your light is on. You get your full rebuttal. I'm making the point you still have rebuttal if you want it. Right, yes. I think I had mentioned earlier when I came in, three minutes. Okay, great. That's perfect.  Good morning, Mr. Ryan. Good morning, Your Honors. May it please the Court, Colin Ryan on behalf of the APALE, Toledo Refining Company. I think this case perfectly exemplifies the long-standing principle that summary judgment stage is the, quote, put-up-or-shut-up time on critical issues asserted in this case. And ultimately, what I think this is is a summary judgment stage when this issue comes down for appeal purposes is the simple fact that appellant did not do that here. Appellant failed to put up any evidence of causation from a medical expert in order to establish a critical element for their negligence claim. The two questions that the district court walked through in reaching their opinion were, one, is expert testimony required here for purposes of establishing causation? The district court said, yes, there's well-established case law regarding internal complexities of the bodies beyond the layman's perspective that medical opinion from an expert witness would be required. And as I read the appellate brief by the appellants, I don't believe that that issue is even subject to appeal or raised on appeal. So we're really talking about the second question, which is, was expert testimony provided in this case to establish causation? I believe I heard, and it was from the appellant's opening briefs, that we're not talking about the property damage, so it's really just the personal injury aspect of their— Wouldn't a doctor's report suffice in some situations? I mean, let's say it's neck pain and you're back-ended in a car, and all the doctor says is he came in after getting rear-ended by the car and his neck's really hurt, and it is hurt. Do we now need more causation evidence at that point? Absolutely. In that situation, and there's a ton of cases out there documenting when the causal connection between the incident and the alleged injuries is so blatant and obvious, you may not even need expert testimony to opine on causation. You just may have an expert in that context who would— A doctor's report wouldn't suffice. That's what I'm asking you. So the doctor's report says he came in, his neck clearly—there's something wrong. He says it happened because he was rear-ended. He didn't have neck pain before. I've treated him before. He's a super healthy person. You then need an expert then. I don't believe so. I think that that would fall— So why—so that just proves there's this spectrum here, and, I don't know, a big explosion? So there is a spectrum, and I think the first part of the spectrum deals with, are we talking about retained experts or non-retained experts who don't need to provide an expert report? And we're not disputing that treating physicians would fall under Rule 26A2C. But that doesn't alleviate, to Judge Sipar, your point that they still have to disclose, specifically the subject matter on which they're expected to present evidence under, and a summary of the facts and opinions to which the witness is expected to testify. What if they had said—I know they didn't, but what if they said he presented with these injuries, and these injuries are consistent with an explosion or consistent with a car accident, to use Judge Sutton's point? Would that be sufficient? Those would be different facts, and I think the question would become, is that a proper opinion? And from there, we would be able to pursue that. I go back to the Fielding case that the appellant cited, and I think that that analogy applies there, because in that context it dealt with somebody complaining about carpal tunnel from repetitive wrist movements on the job. And there was medical literature out there that the treating physician was able to reference to say, yeah, that would be consistent with the type of thing that the individual is complaining of here. We don't have any of that here. I also note that in that case, the treating physician actually did provide a causation opinion and said in my medical opinion, there is a causal connection between the workplace repetitive movements with his wrists and his carpal tunnel conditions that he's complaining of. All that we know here is exactly what was in the treatment records, and Judge DePauw, your question is exactly right. It is only a record of what the patient complained about when he met with his doctor at the time. But what I think appellants are trying to do is conflate a written record of a patient's subjective complaints to his doctor with an actual medical opinion from a treating physician, that there is a causal connection between the patient's injuries and the alleged incident that occurs. And practically speaking, I mean, I've seen this done in cases before, both on the defense side and the plaintiff side, what typically is done when you have a treating physician who's going to be your expert, and maybe they're going to be testifying outside the bounds or beyond the scope of their medical records, so beyond just treatment and diagnosis and they're going to actually talk about causation, plaintiffs get a letter from their doctor. It's not an extensive written report that you would typically see for a retained expert, but it at least provides the bare bone minimum that you would expect to see, the summary of information and the facts and opinions that the expert is going to be saying to say, I believe that this injury the patient came to me, that I'm treating him for, is causally related to, say, his repetitive wrist movements at the job and that's caused carpal tunnels. But we didn't do that here. Plaintiffs could have easily gotten that. And I've also seen in cases where, to judge the part of your question, or I think maybe this was Judge Sutton, when you ask these doctors, do you have an opinion on causation, one, they don't even know about the case, and two, they say exactly that, no, I was just documenting what the patient had told to me when he complained about his background and problems. So none of these are sufficient, though, to constitute a medical opinion with a reasonable degree of medical certainty that the patient's complaints that he was making to his doctor are in any way, shape or form, causally related to this alleged incident, that the doctors don't even know whether or not this incident even occurred. And I would just also note, too, that there is even conflicting information within the patient's own medical records. There's reference to a car accident that occurred back in 2008. He, in fact, had to get a spinal-cervical fusion done at that time. So what I would expect to see from a doctor who's providing a causation opinion would be something addressing that, and then was there any substantial aggravation or worsening of this preexisting condition that the patient undisputedly had. And we don't have any of that here. The only thing that we have is a background section reference in a medical record that says patient complained of X. But I'm aware of no case in Ohio, federal or state, that says that that is sufficient to constitute a medical opinion to establish causation as an element of the plaintiff's claim. I see I have seven minutes remaining, but unless the court has any further questions, I'm happy to yield the rest of my time. The longer the argument is not necessarily the better the argument, so it's fine to say you're done. Thank you, Your Honor. Thank you very much. Mr. Berry, you've got some rebuttal. I found it interesting in Mr. Ryan's argument that he did not have much of a problem with a record that indicated a rear-end collision and the resulting injury, and that was sufficient on causation versus the difference between an explosion and the injury that occurred to my client here. I think that's a distinction without a... How far away was the explosion again? I forget. About just a little less than two blocks away. I mean, it was close enough that there would be rattling of the house. Like I said, we couldn't find an expert on the rattling of the house, but it's about that close. And the other thing Mr. Ryan mentioned was that... Did you try to find an expert on his complaints? Did you try to find a medical expert on his complaints? We went directly... I'm asking because you said you tried to find one on the property. I'm just asking if you tried to find a medical one. No, we saw the information that the doctor put into his record and went with that in this case. Like I said, just as was indicated... We should have used the stone mason or whoever fixed... Was there actual damage? Did they have to have repairs to the house? There was. The house is a pretty old house, and I think that was the basic problem with how much was deterioration in the house versus how much was shaking from the explosion itself. It's what we heard from most of the people we tried to get contact about, the house damage. The other thing that is important to keep in mind, Your Honors, is... There was never any complaint raised with respect to either of these two experts, either Mr. Johnson or Dr. Atkins, when we disclosed them originally and indicated they would testify on causation and harm. There was no other complaint later on in the case when we indicated to the court that their opinions and their records were their opinions. It's interesting that the Condragunta case, which is also cited by the parties in this case, indicates that there was a procedure that could have been used in that situation, calling for further information on the experts. In this case, the defense did not do that. Instead, they just filed their motion for summary judgment and did not follow what was the procedure that was recommended, anyway, in the Condragunta case. I see your red light is on, so unless you have anything else, I think we're all good. No, thank you, Your Honors. All right, thanks to both of you for your helpful arguments and briefs. We appreciate it.